Francis Garcia v. Raytheon et al.      CV-98-595-B    12/4/00

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Francis Garcia</u>

    v.                                          Civil No. 98-595-B
                                              Opinion No. 2000DNH256

<u>Raytheon Employees Disability Trust</u>
<u>and Metropolitan Life Insurance Company</u>

<u>**MEMORANDUM AND ORDER**</u>

Francis Garcia brings this action pursuant to the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)

(B), to recover benefits allegedly due to him under the terms of

the Raytheon Long Term Disability Plan (the "Plan").  Garcia

alleges that the decision of defendant Metropolitan Life

Insurance Company ("MetLife"), the claims administrator under the

Plan, to terminate his disability benefits was arbitrary and

capricious.  Before me are Garcia's motion for judgment on the

administrative record (doc. no. 19) and defendants' motion for

judgment on the administrative record (doc. no. 20).[1]  For the

_____

[1]  On January 10, 2000, I issued a margin order: (1) denying
defendants' motion for summary judgment (Doc. No. 9); (2)
ordering defendants to file a copy of the administrative record

reasons set forth below, I deny Garcia's motion and grant the defendants' motion.

## I.  BACKGROUND[2]

After retiring from his position as a Corrections Officer with the Massachusetts Department of Corrections, Francis Garcia went to work for Raytheon as a security guard in 1987.  As a Raytheon employee, Garcia was eligible to participate in the Plan.

## A.  The Plan

The Plan divides benefit eligibility into two phases. During the initial phase of up to twenty-four months, an employee is eligible for benefits if he is found to be "fully disabled." The Plan defines "fully disabled" as unable to perform substantially all of the duties of the employee's job at Raytheon even with a reasonable accommodation.  In the second phase, an

---

in this case with the court; and (3) requiring plaintiff to file a motion and memorandum explaining why he is entitled to judgment on the administrative record and requiring defendants to respond thereto.

[2]  The background facts set forth herein are taken from the administrative record filed with this court by the defendants.

employee is eligible for benefits only if he is found to be "totally disabled," meaning that the employee can not: (1) perform the essential elements and substantially all of the duties of his job at Raytheon even with reasonable accommodations; and (2) perform any other job for which he is fit by education, training, or experience. The burden is on the employee to provide satisfactory proof of the nature and extent of his disability.

## B.   Phase One: Garcia's Claim for Disability Benefits

In January 1988, Dr. Khawaja Rahman, a neurologist, examined Garcia. Garcia complained of occasional numbness in the fingers of his left hand, in his left leg and foot, and in his neck, as well as incontinence. Dr. Rahman found that Garcia had decreased sensitivity on his left side. Garcia's symptoms disappeared shortly thereafter.

Garcia's symptoms reemerged later that year and in December 1988 he went to see Dr. Rahman again. After having a number of tests performed, including an MRI and CAT scan, Dr. Rahman's assessment of Garcia's condition was "probable multiple

sclerosis."[3]

Garcia did not return to work after seeing Dr. Rahman. Citing numbness in his extremities, he applied for disability benefits under the Plan in March 1989. His claim was approved and he began receiving benefits in April 1989.

In connection with Garcia's application for benefits, Dr. Rahman submitted an Attending Physician's Statement of Functional Capacity ("SFC") to MetLife in May 1989. On that form, Dr. Rahman listed the limitations that Garcia's medical condition placed on his ability to perform certain activities. According to Dr. Rahman, Garcia should completely avoid: assuming cramped positions; grasping/handling; climbing stairs, ladders, or scaffolds; operating heavy equipment; and operating electrical equipment. Garcia had "some limitation" with regard to the following activities: transportation; standing; sitting; reaching forward or overhead; pushing, pulling, or twisting; finger

---

[3] Multiple sclerosis is the occurrence of patches of sclerosis, or plaques, in the brain and spinal cord, causing some degree of paralysis, tremor, nystagmus, and disturbances of speech. The various symptoms depend upon the location of the lesions. It occurs chiefly in early adult life, with characteristic exacerbations and remissions. Stedman's Medical Dictionary 1393 (25th ed. 1990).

dexterity; repetitive movement; and operating a dolly or small vehicle. He had no limitation with regard to: change of position (sitting/standing); bending, stooping, or squatting; or concentrated visual attention. Dr. Rahman, while noting that Garcia's condition had improved, also concluded that Garcia was "totally disabled" for any occupation, including his security guard position. Dr. Rahman noted that he could not determine when Garcia would be able to resume work activities.

Just a few months later, in August 1989, Dr. Rahman submitted a new SFC and concluded that Garcia was no longer totally disabled. While Garcia's condition had improved, Dr. Rahman noted that he could not determine when Garcia would be able to return to work.

In November 1989, Dr. Rahman found that Garcia's condition had not improved. Once again, he concluded that Garcia was totally disabled for any occupation. In March 1990, Dr. Rahman found no change in Garcia's condition and, for the first time, noted that Garcia would "never" be able to resume work activities. Subsequent SFC's completed by Dr. Rahman in August 1990 and January 1991 contained the same conclusions.

C.    **Phase Two: Examinations and Assessments**

By February 1992, Garcia had entered the second phase of benefit eligibility under the Plan, in which he was required to show that he was totally disabled. Dr. Rahman concluded, in five SFC's submitted between February 1992 and June 1995, that Garcia remained totally disabled.

In June 1995, Raytheon medical personnel examined Garcia. The examining physician, whose identity is not clear from the record, concluded that although Garcia's condition imposed certain physical limitations upon him, he was not totally disabled. After reviewing this assessment, Raytheon concluded that they could accommodate Garcia's restrictions and he could return to work as a security guard. MetLife informed Garcia of this decision in July 1995.

Dr. Rahman disagreed with MetLife's assessment of Garcia's work capability. MetLife then referred Garcia to Dr. Michele Masi, who examined Garcia in September 1995. At this examination, Garcia stated that he had been using a cane to walk since 1988 and that he had fallen several times. He complained of numbness and unsteadiness in his left side, chronic fatigue, and problems with his memory. Dr. Masi found that Garcia had reduced strength and sensory perception on his left side, as well as

significant cognitive deficits including short term memory difficulties. She concluded that he had chronic progressive multiple sclerosis and that his condition was unlikely to improve. Based on that assessment, and "particularly in light of the cognitive deficits noted today," she concluded that Garcia was totally disabled.

Despite Dr. Masi's assessment, Raytheon continued to review Garcia's claim. As part of that review, Raytheon hired a private investigator to observe Garcia's daily activities and to interview his neighbors in January and April 1996. The private investigator observed that Garcia walked with a limp but did not use a cane. He also observed Garcia driving his car and visiting with friends. According to the investigator, Garcia's neighbors told him that Garcia "kept busy," did his own yardwork, and shoveled his own snow.

In March 1996, as part of their review of Garcia's claim, MetLife asked Dr. George Lim to review Garcia's medical file and the private investigator's reports. Dr. Lim concluded that Garcia's "physical activity seems to allow some level of work" and he recommended that MetLife ask for objective medical evidence to confirm Dr. Rahman's diagnosis of multiple sclerosis.

In May 1996, MetLife asked a member of an independent medical

consulting group, Dr. Robert Petrie, to review Garcia's file more fully.

Dr. Petrie questioned the diagnosis of multiple sclerosis and concluded that Garcia was not totally disabled. He noted that Garcia's primary impairment was weakness in his left leg but that Garcia could walk without a cane. He also noted that Dr. Masi's finding of cognitive deficits conflicted with the reports of Dr. Rahman, who had consistently found no such deficits in his many examinations of Garcia. He found that Garcia was employable, but with restrictions on standing, walking, lifting, and other activities. Raytheon's medical personnel agreed with this assessment and concluded that they could accommodate Garcia's restrictions in his position as a security guard.

In July 1996, another Raytheon physician, Dr. Martha Lipchitz, examined Garcia. She noted that Garcia walked with a cane and with an unsteady gait. Dr. Lipchitz opined that Garcia could attempt a sedentary job where he was allowed to stand up and stretch, as needed, and use a cane.

Based upon a review of the evidence, MetLife concluded, in August 1996, that there was insufficient objective medical evidence to support the conclusion that Garcia was "totally

disabled." Accordingly, MetLife terminated Garcia's benefits. Garcia appealed this decision.

## D.  __Garcia's Appeal__

In response to Garcia's appeal, Dr. Petrie again reviewed Garcia's medical file, which now included the most recent evaluation performed by Dr. Rahman.  Dr. Petrie did not change his initial assessment that Garcia was employable.

MetLife subsequently obtained a vocational assessment of Garcia, based on his medical file.  The vocational assessment company ultimately concluded that Garcia was capable of performing semi-skilled to skilled employment at a sedentary to light duty level, with some limitations based on his physical condition, but that he lacked the residual functional capacity to return to his position as a security guard at Raytheon. According to the assessment, Garcia, based on his work experience, was capable of employment as either a security guard[4], gate guard, or airline security representative.

---

[4]  The report suggests that Garcia lacked the residual functional capacity to return to his position as a security guard at Raytheon because Raytheon required its security guards to perform more heavy lifting than was normally required for such a position.  Garcia, the report suggests, could work as a security guard where heavy lifting was not required.

In March 1997, Dr. Petrie again reviewed Garcia's medical file, including the recent vocational assessment report. He opined that, regardless of the cause of Garcia's impairments, Garcia was not totally disabled so as to preclude employment.

On March 12, 1997, after reviewing the record, MetLife upheld its decision to terminate Garcia's benefits. MetLife stated that "there is insufficient evidence to demonstrate significant impairment which would prevent Mr. Garcia from performing semi-skilled to skilled employment." There were no other administrative appeals available to Garcia, who subsequently initiated this action.

## II.  STANDARD OF REVIEW

All parties agree that MetLife's decision to terminate Garcia's benefits should be reviewed under the arbitrary and capricious standard of review, sometimes referred to as the abuse of discretion standard. Given the clear language in the Plan granting discretionary authority to MetLife, I see no need to disturb the parties' assumption. See Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (where a benefit plan clearly grants discretionary authority to plan administrator, arbitrary and

-11-

capricious standard of review applies); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)(courts review denial of benefits under *de novo* standard unless benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan).

Whether it is referred to as arbitrary and capricious review or abuse of discretion review, the touchstone of this standard is reasonableness. See Terry, 145 F.3d at 37 n.6 ("[T]here is no need to adopt one phrase and avoid the other . . . reasonableness . . . is our polestar.") (quoting Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1454 (D.C. Cir. 1992)); see also Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999) (reasonableness is the touchstone of this standard of review). In reviewing a decision to terminate benefits, a court may not substitute its judgment for that of the decision-maker. Terry, 145 F.3d at 40 (internal quotations and citations omitted). Rather, under this deferential standard of review, a decision by a plan administrator must be upheld if it was within the plan administrator's authority, reasoned, and supported by substantial evidence in the record. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183-84 (1st Cir. 1998) (internal citations and quotations omitted).

Substantial evidence means "evidence reasonably sufficient to support a conclusion." Id. at 184; see also Recupero v. New England Telephone and Telegraph Co., 118 F.3d 820, 830 (1st Cir. 1997) (reviewing court should not set aside a factual finding that has adequate support in the record). "Sufficiency, of course, does not disappear merely by reason of contradictory evidence." Doyle, 144 F.3d at 184. I apply this standard in reviewing MetLife's decision to terminate Garcia's benefits.

## III. DISCUSSION

Garcia claims that MetLife's determination that he was not totally disabled, and that therefore his benefits should be terminated, was arbitrary, capricious, and an abuse of discretion. Specifically, Garcia argues that MetLife ignored or disregarded the opinions of Drs. Rahman and Masi, who examined Garcia and concluded that he was totally disabled, and instead focused only on the opinion of "one physician reviewing documents." See Pl.'s Mot. for Judgment on Admin. Record (doc. no. 19) at 7. Garcia also suggests that defendants' actions

bordered on bad faith.[5]  Defendants respond that there was

reasonably sufficient evidence in the record to support MetLife's

conclusion that Garcia was not totally disabled.

MetLife had authority under the Plan to determine whether

Garcia was "totally disabled."  The Plan defines that term as

meaning that an employee is unable do any other job for which the

employee is fit by education, training, or experience.  I pause

here to note that "such general disability provisions should not

be construed so literally that an individual must be utterly

helpless to be considered disabled."  Doyle, 144 F.3d at 184

(quoting Hammond v. Fidelity & Guar. Life Ins. Co., 965 F.2d 428,

431 (7th Cir. 1992)) (interpreting policy term "totally

disabled").

Implicit in Garcia's argument are the following assumptions:

(1) that MetLife should have given controlling weight to the

opinion of Dr. Rahman because he was Garcia's treating physician;

---

[5]  With regard to this line of argument, I note that "[a]ny
inferences of bad faith . . . are weighed not in the
determination of whether the decision was incorrect, but in
reviewing a possible abuse of discretion."  James v. Louisiana
Laborers Health and Welfare Fund, 29 F.3d 1029, 1033 (5th Cir.
1994) (per curiam).  The question then is whether the actions
Garcia complains of render the defendants' decision arbitrary and
capricious.

or (2) that MetLife should have given more weight to the opinions of Drs. Rahman and Masi, rather than Dr. Petrie, because they examined Garcia and Dr. Petrie did not.

## A.   Dr. Rahman's Opinion

First, as a general matter, a plan administrator is not required to give controlling weight to the opinion of a treating physician.  See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 126 (4th Cir. 1994); see also Chandler v. Raytheon Employees Disability Trust, 53 F. Supp. 2d 84, 91 (D. Mass. 1999); Greene v. Metropolitan Life Ins. Co., 924 F. Supp. 351, 359-60 (D.R.I. 1996).  "To require [a Plan administrator] to give conclusive weight to the opinion of the treating physician would deprive it of its role in determining" whether an employee is disabled.  Sheppard & Enoch Pratt Hosp., Inc., 32 F.3d at 126. Therefore, absent unique circumstances not present here, MetLife was not required to accord controlling significance to Dr. Rahman's opinion.  Cf. Doe, 167 F.3d at 58 (affording "special weight" to treating experts' diagnosis of suicidal risk because "[i]t is much harder to calibrate such risks [of suicide] than to diagnose conditions that can be reduced" to medical test results).

-15-

Regardless of the weight accorded to Dr. Rahman's opinion, I note that even he found that Garcia had only "some limitation" with regard to the following activities: transportation; standing; sitting; reaching forward or overhead; pushing, pulling, or twisting; finger dexterity; repetitive movement; and operating a dolly or small vehicle.  Dr. Rahman also found that Garcia had no limitation with regard to: change of position (sitting or standing); bending, stooping, or squatting; or concentrated visual attention.  In addition, Dr. Rahman found that Garcia had no cognitive deficits.  These findings arguably weigh against Dr. Rahman's ultimate finding of total disability. At the very least, these findings supported MetLife's decision to seek additional evidence of disability.

B.    **The Opinions of Non-treating Physicians**

Second, as a general matter, it is not unreasonable for a benefit plan administrator to rely on the opinion of a non-examining physician in reaching an eligibility determination. See Greene, 924 F. Supp. at 359 (collecting cases).  This principle holds true even where the non-examining physician's opinion contradicts that of the examining physician.  See id. at 359-60; Chandler, 53 F. Supp. 2d at 91; see also Doyle, 144 F.3d

-16-

at 184 ("Sufficiency, of course, does not disappear merely by reason of contradictory evidence.")

In this case, although both Drs. Rahman and Masi examined Garcia, their opinions contradicted each other. While both of them diagnosed Garcia with multiple sclerosis, Masi emphasized that her finding of "totally disabled" was based on her finding that Garcia suffered from a number of cognitive deficits. Dr. Rahman, by contrast, never found any such cognitive deficits. In addition, the private investigator's surveillance reports contradict the statements that Garcia made to Dr. Masi regarding his use of a cane for walking. Given this contradictory evidence, it was not unreasonable for MetLife: (1) not to give any special weight to the opinions of Drs. Rahman and Masi; and (2) to ask a non-examining physician to review Garcia's file.

## C.    The Record Supports MetLife's Decision

According to MetLife's letter to Garcia notifying him of the termination of his benefits, MetLife's conclusion that Garcia was not totally disabled was based upon all the medical and vocational evidence in the record. Among the evidence in the record that supports MetLife's conclusion are the following: (1)

the private investigator's surveillance report which showed that Garcia walked without a cane; (2) Dr. Lim's opinion that Garcia could work; (3) Dr. Petrie's opinion that Garcia could work; (4) the opinion of Dr. Lipchitz, who examined Garcia, that Garcia could perform sedentary work; and (4) the vocational assessment report.

The mere presence of a conflict between the opinions of Drs. Rahman and Masi and the opinions of the other medical and vocational professionals listed above, does not render MetLife's decision arbitrary, capricious, or an abuse of discretion. See Terry, 145 F.3d at 41; Doyle, 144 F.3d at 184.

Nor do I find any merit to Garcia's assertions of bad faith.[6] It is clear that the terms of the Plan placed the burden on Garcia to show that he was totally disabled. As claims

---

[6] Garcia does not specifically state which particular actions were made in bad faith, but suggests that the defendants' engaged in a "concerted effort" to terminate his benefits. He implies that the following actions were indicative of bad faith: (1) the defendants' persistent requests for medical documentation of his disability; (2) the use of a private investigator; and (3) the sending of a telegram, directing him to report to Raytheon for a physical, directly to him instead of to his counsel. He also asserts that Dr. Lipchitz informed him "that the sole reason he was summoned [for the physical] was to be told that his disability benefits were going to be terminated."

administrator, MetLife has an obligation to ensure the veracity of claims of disability.  With that in mind, and after reviewing the administrative record, I can infer no bad faith from MetLife's conduct.  Nor can I infer bad faith from Garcia's bald assertion that Dr. Lipchitz told him that the sole reason Garcia was summoned for a physical was to be told that his benefits were being terminated.  Even if Dr. Lipchitz made that statement, it arguably reflects the fact that Dr. Petrie had recently opined that Garcia was not totally disabled, rather than evincing a possible crusade against Garcia.  In any event, this statement alone is not enough to outweigh the substantial evidence in the record that supports MetLife's decision.

Although I might have weighed the evidence in this case differently, I may not substitute my judgment for that of MetLife.  See Terry, 145 F.3d at 40; Doyle, 144 F.3d at 184.  Given: (1) the numerous medical opinions in the record concluding that Garcia was not totally disabled; (2) the conflicting nature of the opinions of Drs. Masi and Rahman; (3) the private investigator's surveillance report; and (4) the vocational assessment report, I conclude that MetLife's decision was

supported by substantial evidence and reasonable.  See <u>Chandler</u>, 53 F. Supp. 2d at 91 (not unreasonable to rely on medical assessments of examining and non-examining physicians, vocational assessment report, and surveillance report).

## IV.  <u>CONCLUSION</u>

After reviewing the administrative record, I find evidence reasonably sufficient to support MetLife's conclusion that Garcia was not "totally disabled" under the Plan.  Therefore, the decision to terminate Garcia's benefits was neither arbitrary, nor capricious, nor an abuse of discretion.  Accordingly, I deny plaintiff's motion for judgment on the administrative record (doc. no. 19) and grant defendants' motion for judgment on the administrative record (doc. no. 20) and the clerk is directed to enter judgment for the defendants.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

December 4, 2000

cc:  Fred Forman, Esq.
     William D. Pandolph, Esq.

-20-