Smith v. Fortis Benefits          CV-02-055-B    03/06/03

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

William Smith

    **v.**                                      Civil No. 02-055-B
                                                Opinion No. 2003 DNH 035
**Fortis Benefits**
**Insurance Company**

**MEMORANDUM AND ORDER**

William Smith brings this action pursuant to the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)

(B) (1999), to recover benefits he alleges are due to him under

the terms of a long-term disability plan insured and administered

by Fortis Benefits Insurance Company ("Fortis").  Smith alleges

that Fortis' decision to deny him benefits was arbitrary and

capricious.  Fortis moves for summary judgment arguing that

substantial evidence in the administrative record supports it's

decision to deny Smith benefits and therefore it's decision was

not arbitrary and capricious.  (Doc. No. 7).  Smith argues in

response that Fortis improperly categorized his position as light

work when in fact it was medium work.  He further argues that

Fortis: improperly disregarded his treating physician's opinions; failed to consider non-exertional stress produced by his position; and gave insufficient weight to the Social Security Administration's decision granting him disability insurance benefits. For the reasons that follow, I grant Fortis' motion for summary judgment.

## I. BACKGROUND

William Smith worked in the electronic semiconductor industry for over thirty years. In the fall of 1998, Smith began working for New England Semiconductor ("NES") as a project/test electronics engineer. As an NES employee, Smith participated in NES's long-term disability benefits plan (the "Plan"). Fortis was the Plan's insurer and administrator at all relevant times. Smith remained employed with NES until November 2, 1999, when Smith's position was eliminated as part of a pre-planned lay-off.

### A. The Plan

The Plan defines "disability" to mean that "in a particular month, you satisfy either the Occupation Test or the Earnings Test...You may satisfy both the Occupation Test and the Earnings

Test, but you need only satisfy one Test to be considered disabled." To satisfy the Occupation Test, "during the first 24 months of a period of disability (including the qualifying period), an injury, or sickness, or pregnancy requires that you be under the regular care and attendance of a doctor, and prevents you from performing at least one of the material duties of your regular occupation." After 24 months of disability, the Occupation Test requires that "an injury, sickness or pregnancy prevent you from performing at least one of the material duties of each gainful occupation for which your education, training, and experience qualifies you." The Plan defines material duties to mean "the set of tasks or skills required generally by employers engaged in a particular occupation." A "period of disability" as used in the Occupation Test is defined as "the time that begins on the day you become disabled and ends on the day before you return to active work."

A claimant will be considered disabled under the Earnings Test if, "in any month in which you are actually working, if an injury, sickness, or pregnancy, past or present, prevents you from earning more than 80% of your monthly pay in that month in

any occupation for which your education, training and experience qualifies you."

The Plan also states that: "[Fortis] has the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy. All determinations and interpretations made by us are conclusive and binging on all parties."

The Plan provides that "a covered person who leaves the group covered under [the Plan]" will remain insured as follows: "if a plant closes down or partly closes down, the person will remain insured for 90 days after that; and for any other reason, the person will remain insured for 31 days after that. However, coverage will end if the person becomes entitled to similar benefits from another source."

B. **The Claim**

In 1996, Smith suffered a heart attack and underwent coronary bypass surgery. Smith participated in cardiac rehabilitation after his surgery and returned to work. In October 1999, Smith visited his cardiologist, Dr. Mary-Claire Paicopolis, complaining of fatigue and shortness of breath.

Smith then underwent a sestamibi stress test on October 27, 1999. The stress test indicated normal hemodynamic response to exercise and no chest pressure when exercising. Dr. Paicopolis opined that the changes on the electrocardiogram during the stress test were consistent with ischemia. She further indicated that although Smith was able to exercise for 8 minutes 59 seconds, the study was limited by shortness of breath and fatigue.

Smith had a follow-up appointment with Dr. Paicopolis on November 15, 1999. Dr. Paicopolis noted that although Smith had not had any chest or arm discomfort, he had had some tingling down his left arm and agreed to undergo a left heart catherization.

Two days later, Smith underwent the left heart catherization and Dr. Paicopolis noted the left main trunk was without significant disease. She did, however, note that the catherization showed significant graft occlusion. At follow-up visits with Dr. Paicopolis, Smith stated he did not want to undergo surgery, but that he was willing to try medical therapy. Although Smith does not have any chest or arm discomfort, he stated that he is quite fatigued and has shortness of breath when

he does any kind of work.  Dr. Paicopolis opined that Smith cannot work in his current job.

Smith filed for long term disability benefits in December 1999.  On his application, Smith stated that his position as an electronics test engineer required him to lift 25 to 100 pounds frequently, carry up to 25 pounds frequently, and carry up to 50 pounds occasionally.  Smith further indicated that his position required him to supervise 8 to 15 people, exposed him to marked changes in temperature and humidity or extremes thereof, and exposed him to dust, fumes, gases or chemicals.

Dr. Paicopolis completed the attending physician portion of Smith's application.  In it she opined that Smith had a class 4 physical impairment rendering him capable of only sedentary, clerical or administrative work.  She further opined that Smith's cardiac functional capacity placed him in class 3 or "marked limitation."

On March 14, 2000, Fortis denied Smith's application for disability benefits finding Smith's medical limitations did not prevent him from performing any of the material duties of his position.  Smith, after retaining counsel, appealed the denial

and attached a letter dated April 6, 2000 from Dr. Paicopolis. In this letter, Dr. Paicopolis stated that "from a cardiovascular standpoint [Smith] is a Class II [slight limitation] to III [marked limitation]" and as such she opined that Smith is "disabled from a cardiovascular standpoint to do any significant exertional work." She added that it was her clinical opinion that Smith cannot work.

On May 10, 2000, NES's human resource manager sent a letter to Fortis denying that Smith supervised 15 employees. In addition, the human resource manager attached an email from Smith's former supervisor detailing his duties. The email lists Smith's primary duties as setting up and analyzing the results of tests and ensuring the accuracy of test equipment.

Fortis denied Smith's appeal on June 14, 2000. Fortis acknowledged that Smith should not engage in heavy physical labor, but noted that Smith was capable of low levels of exercise or working in a sedentary or light work occupation. Fortis cited Dr. Paicopolis' April 6, 2000 letter indicating Smith was precluded from "significant exertional work." Fortis also relied on the Dictionary of Occupational Titles ("DOT"), published by

the Department of Labor.  The DOT classifies Smith's occupation, an electrical test engineer, as a light duty job.  Furthermore, Fortis cited to information provided by NES concurring with the DOT's light duty indication and contradicting the information provided by Smith in his initial application for benefits.  Specifically, Fortis stated that NES indicated the following discrepancies:  most of the parts that Smith was required to lift weighed less than 20 pounds; he did not have to carry items as carts are provided; he worked in a 70-degree climate controlled environment; he was not exposed to chemicals due to the controlled environment; and he did not supervise other employees.  Fortis also explained in a letter dated July 14, 2000, that Smith's policy insures his occupation, not his specific job and the material duties noted in the Occupation Test provision of the policy refers to the set of tasks or skills required generally by employers from those engaged in a particular occupation.

In July 2000, Smith appealed Fortis' decision to affirm its denial of disability benefits.  Smith included in his appeal a notice from the Social Security Administration ("SSA") granting him disability insurance benefits ("DIB") and argued that the

SSA's "independent and neutral evaluation" of Smith's condition is strong evidence that Fortis' denial of benefits is unreasonable.

Smith's appeal was submitted to Fortis' Appeals Committee which included Dr. Craig Heligman. Dr. Heligman contacted Dr. Paicopolis to investigate Smith's appeal. In a memorandum detailing his conversation with Dr. Paicopolis, Dr. Heligman noted that Dr. Paicopolis assumed Smith was a manager. Dr. Heligman discussed how the results of the stress test demonstrated that Smith's sustainable work capacity matched his work demands. Dr. Heligman further noted that Dr. Paicopolis would not release Smith to work unless Smith stated that he was asymptomatic on the job. Nevertheless, Dr. Heligman ultimately decided that even though he agreed that Smith would benefit from surgical intervention, Dr. Paicopolis had overstated Smith's level of disability.

In investigating Smith's final appeal, Fortis asked NES to complete a form indicating what Smith's actual duties were as compared to the description of his duties that he provided in his initial application. A representative from NES identified

multiple areas in which the company disagreed with Smith's description of his duties at NES. NES again disagreed that Smith supervised other employees. NES informed Fortis that Smith had been offered a position which would have included supervisory responsibilities, but that he had turned it down. In addition, NES reiterated that Smith was seldom, if at all, exposed to chemicals or temperature changes. Furthermore, NES denied that lifting equipment up to 100 pounds was ever a job requirement for Smith because Fortis has an equipment department that handles the moving of equipment.

Fortis denied Smith's final administrative appeal in September 2000. Once again, Fortis found that Smith should not engage in physical labor, but that he is capable of working at the light to sedentary level, as was required of him in his job with NES. Smith then instituted this proceeding in federal court.

## II. __STANDARD OF REVIEW__

Because the Plan reserves to Fortis the discretion to determine eligibility for benefits and to interpret the terms of the Plan, my review of Fortis' denial of benefits is limited to the "deferential arbitrary and capricious standard."[1] Cook v.

---

[1] I note that the First Circuit has used "arbitrary and capricious" "abuse of discretion" and or "unreasonable" interchangeably. See Leahy v. Raytheon Co., 315 F.3d 11, 15 n. 3 (1st Cir. 2002).

Liberty Life Assurance Co. of Boston, 2003 WL 245402 *6 (1st Cir. Feb. 5, 2003) (quoting Pari-Fasano v. ITT Hartford Life and Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000)). Under this standard, I must uphold Fortis' decision "if it was within [Fortis'] authority, reasoned, and supported by substantial evidence in the record." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). A decision is supported by substantial evidence in the record when there is evidence "reasonably sufficient" to support a conclusion. Moreover, sufficiency "does not disappear merely by reason of contradictory evidence." Id.; see Vlass v. Raytheon Employee Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001).

The Parties do not contest that the language of the Plan reserves discretion to Fortis. Nevertheless, Smith argues that Fortis was improperly motivated by a conflict of interest and therefore I must apply a heightened standard of review. Specifically, Smith argues that Fortis has an inherent conflict of interest evidenced by its "wrong and unreasonable" decision and "overwhelmingly insufficient" record. Smith further argues that a conflict of interest standard should be applied because Dr. Heligman, the only physician to review his claims for Fortis, failed to adequately consider Dr. Paicopolis' opinions.

In it's recent decision in Leahy v. Raytheon Co., 315 F.3d 11, 16 (1st Cir. 2002), the First Circuit reiterated that "to affect a standard of review, the conflict of interest must be

real." "A chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that otherwise would be due." Id. (citations omitted). As in Leahy, the alleged conflict of interest Smith alludes to "does not meet this screen." Id. Smith's arguments do not point to a single conflict of interest other than that which always exists when an insurer determines an insured's eligibility for benefits. The fact that Dr. Heligman was the only physician to have reviewed Smith's claim does not establish that Fortis was operating under a conflict of interest or an improper motivation. See Doyle, 144 F.3d at 184 (An example of a conflict of interest is when a policy manager has a personal interest contrary to the

beneficiary's.). If anything, Smith's arguments are relevant to whether or not Fortis' decision was arbitrary and capricious, but they do not persuade me to alter the degree of deference that is due to Fortis under <u>Firestone Tire & Rubber v. Bruch</u>, 489 U.S. 101, 109 (1989).

As such, I apply the arbitrary and capricious standard to Fortis' decision and consider only the evidence that was before Fortis at the time of it's decision. <u>See</u> <u>Doyle</u>, 144 F.3d at 184.

## III. <u>DISCUSSION</u>

Fortis argues that summary judgment should be granted in its favor because it's decision is supported by substantial evidence in the record. Smith, on the other hand, argues that Fortis' decision to deny him benefits was arbitrary and capricious. First, Smith argues that his position with NES as an electronics test engineer was incorrectly classified as light duty when in fact it was medium duty work. Second, Smith contends that Fortis did not adequately consider the non-exertional stress produced by his required duties at NES. Third, Smith alleges that Fortis

failed to consider the SSA's determination that Smith was eligible for disability insurance benefits.  Lastly, Smith challenges Dr. Heligman's medical opinions because they are inconsistent with the opinion of Smith's treating physician, Dr. Paicopolis.

## A.   Job Description

In denying his application for benefits, Fortis classified Smith's occupation as light duty work.  Smith argues that the job description he provided in his initial application, along with the information provided by NES, requires a medium duty work classification.  Smith argues that this is crucial to Fortis' denial because Dr. Heligman opined that Smith was capable of only light to sedentary work.  If Smith's position in fact qualified as light work, Smith argues, even Dr. Heligman would find him incapable of fulfilling the duties of his job.

Fortis' classification of Smith's job as light work is supported by substantial evidence in the record.  First, the DOT classified Smith's occupation as light work.  In addition, Fortis clearly informed Smith that it insures only his occupation and not his specific job with NES.  The "material duties" test is

therefore analyzed from the perspective of whether Smith is capable of performing the material duties of his occupation in general, not any additional demands that NES may place on him. In any event, NES, on multiple occasions, denied that Smith was required to lift or carry significant weights. For example, NES informed Fortis that Smith was not required to lift or carry equipment because NES has an entire department devoted to moving equipment and carts were available if Smith chose to move equipment on his own. In addition, most of the equipment that Smith may have carried voluntarily weighed under 20 pounds. It therefore was not unreasonable for Fortis to classify Smith's position with NES as light duty.

Furthermore, NES informed Fortis that Smith had inaccurately stated in his application that he worked in varying temperatures and was exposed to chemicals. As such, Fortis' decision to discredit Smith's own description of his duties in his initial application and to credit NES' description is supported by substantial evidence.

## B.    Non-exertional Considerations

Smith argues that Fortis did not consider or analyze the non-exertional stress levels associated with Smith's duties at NES. In its investigation of Smith's application, Fortis contacted NES multiple times concerning his supervisory responsibilities. NES responded, multiple times, stating that Smith did not supervise other employees in any manner other in

"equipment/technology."  In fact, NES informed Fortis that Smith had been offered a position in which he would have had supervisory responsibilities, but he turned it down.  Further, Fortis considered the possible stress Smith would be exposed to in his supervisory role, but after conferring with NES and finding that Smith did not actually supervise other NES employees except in some vague equipment/technology role, it found him capable of fulfilling all material duties of his position. Fortis did not act arbitrarily or capriciously in making this determination.

## C.   Dr. Heligman's Medical Opinion

Smith argues that Dr. Heligman's disagreement with Dr. Paicopolis' opinion that Smith was unable to work as an electrical test engineer was arbitrary and capricious.  Fortis, as a plan administrator, was not required to give controlling

weight to a treating physician's opinions. See <u>Chandler v. Raytheon Employees Disability Trust</u>, 53 F.Supp.2d 84, 91 (D. Mass 1999) *aff'd* 229 F.3d 1133 (1st Cir. 2000); <u>see</u> <u>also</u> <u>Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.</u>, 32 F.3d 120, 126 (4th Cir. 1994). It is Fortis' responsibility as the plan administrator to weigh conflicting evidence and make an informed determination regarding disability. See <u>Vlass</u>, 244 F.3d at 32. Notwithstanding Smith's assertion to the contrary, <u>Doe v. Travelers Ins. Co</u>, 167 F.3d 53, 58 (1st Cir. 1999) does not require otherwise. In <u>Doe</u>, the First Circuit afforded "special weight" to treating experts' diagnosis of suicidal tendencies because, unlike Smith's condition, "[i]t is much harder to calibrate risks [of suicide] than to diagnose conditions" such as coronary heart disease, which can largely be reduced to medical test results. <u>Doe</u>, 167 F.3d at 58; <u>see</u> <u>Garcia v. Raytheon Employees Disability Trust</u>, 122 F.Supp.2d 240, 245 (D.N.H. 2000).

D. **SSA Determination**

Smith argues that Fortis' decision was unreasonable because Fortis should have placed more weight on the SSA's determination that Smith was totally disabled and therefore entitled to

disability insurance benefits.  Fortis, correctly, argues that the SSA's determination is not binding on a private plan administrator's determination of eligibility for disability benefits.  See Chandler, 53 F.Supp.2d at 91 (citing Doyle, 144 F.3d at 186 n. 4).  Although SSA determinations may be relevant evidence for plan administrators to consider in making their independent determination, they need not be given controlling weight.  Id.  Furthermore, Smith provided Fortis only with the SSA notice that it had granted Smith benefits.  Fortis did not, therefore, know the basis for the SSA determination.  This is especially relevant since Fortis believed the job description Smith provided it with was exaggerated and that Smith may well have provided the same exaggerated job description to the SSA when it made its determination.

## IV.  CONCLUSION

After reviewing the administrative record, Fortis' decision denying Smith disability benefits was supported by substantial evidence that was "reasonably sufficient to support [its] decision."  Vlass, 244 F.3d at 30.  As such, I grant Fortis' motion for summary judgment (Doc. No. 7) and decline to issue benefits as per Smith's request in his objection (Doc. No. 9).  The clerk of court shall enter judgment and close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 3, 2003

cc:  James LaFrance, Esq.
     Kevin C. Devine, Esq.
     Joshua Bachrach, Esq.