**Angel Luis GONZALEZ–RIVERA, Plaintiff,**

v.

**CITIBANK, N.A., et al., Defendants.**

**Civil No. 01–2322(JAG).**

United States District Court,
D. Puerto Rico.

Feb. 25, 2003.

---

Mireya Baltazar–Suazo, Barceloneta, PR, for plaintiff.

Carl E. Schuster, Lourdes C. Hernandez–Venegas, Schuster Usera Aguilo & Santiago, San Juan, PR, Alberto Rodriguez–Ramos, Martinez Odell & Calabria, San Juan, PR, Raoul G. Cantero, Adorno & Zeder, P.A., Miami, FL, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

Angel Luis Gonzalez–Rivera ("Gonzalez"), a long-term disability plan ("the LTD plan") beneficiary, brought suit against the LTD plan's claims administrator, Continental Casualty Company ("CNA"), alleging that the denial of further LTD benefits violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Defendants Citibank, N.A. ("Citibank") and CNA (collectively, "defendants") moved for summary judgment. (Docket No. 28.) Gonzalez opposed the motion for summary judgment (Docket No. 36) but complied with Local Rule 311.12 only partially. (Docket No. 44.) Upon review of the record, and after application of this District's Local Rule 311.12, the Court grants the motion.

## FACTUAL BACKGROUND

Citibank maintains an LTD plan for its employees which is administered by the United State Human Resources Policy Committee of Citibank ("the Committee"). (Docket No. 28, Exhibit 1 at 1–2.) The LTD plan gives the Committee, or the entities it designates, the authority to make decisions regarding eligibility for benefits, to interpret and construe the provisions of the LTD plan, and to decide all matters arising thereunder. (*Id.*, Exhibit 1 at 2, 11–12.) Pursuant to the LTD plan, the Committee entered into a contract with CNA to act as the LTD plan's Claims Administrator/Fiduciary. (*Id.*, Exhibit 2 at 18–33.) Under the contract, CNA has full discretion to evaluate claims, make final disability determinations, evaluate the employee's eligibility, and determine whether the employee's claimed disability meets the terms of the LTD plan. (*Id.*, Exhibit 2 at 22–23.)

In order to receive LTD benefits, a participant must meet the definitions and terms established in the LTD plan, as determined by CNA. (*Id.*, Exhibit 3 at 42.) The LTD plan's definition of disability

---

1. Britt E. Arrieta–Rivera, a third year student at the University of Puerto Rico Law School, assisted in the research and preparation of this opinion.

states that, during the first 18 month of benefits, the person must be medically unable to perform the material and substantial duties of his or her occupation due to a physical or mental impairment ("the first definition"). After receiving benefits for 18 months, the person must be unable to perform for any employer the essential duties of any occupation for which that person is reasonably qualified ("the second definition"). Additionally, the LTD plan limits the LTD benefits for mental or nervous conditions to a maximum of 30 months. (*Id.*, Exhibit 3 at 91.)

Following a claimant's request for LTD benefits, CNA conducts an investigation and requests medical evidence from his or her physicians. CNA can refer the evidence to a medical consultant for review of the claimant's alleged inability to perform the duties of his or her job. Furthermore, a Disability Specialist ("DBS") and a Nurse Case Manager ("NCM") must conduct a peer review and agree on whether, based on the medical evidence presented and the conclusions of the medical consultant, the claimant is disabled.

CNA's investigation continues as long as the claimant is receiving benefits. For this reason, CNA may periodically require claimants to provide updated medical evidence in order to determine whether claimants meet the LTD plan's disability definitions before and after the 18 month period. (*Id.*, Exhibit 4 at 2–3.)

In early 1998, Gonzalez requested LTD benefits due to a disability that began on December 17, 1997. (*Id.*, Exhibit 4 at 3.) On June 4, 1998, CNA sought authorization from Gonzalez to obtain copies of his medical records for purpose of evaluation. These medical records were referred to Charles W. Paskewics ("Paskewics"), a

psychologist, for an independent evaluation. (*Id.*, Exhibit 4 at 3.) On July, 20, 1998, Paskewics issued a report concluding that it was unlikely that Gonzalez could pursue work as long as his psychiatric condition persisted. This conclusion pertained only to Gonzalez's mental condition. (*Id.*, Exhibit 4 at 3–4.)

On August 24, 1998, CNA approved Gonzalez's LTD benefits claim for 6 months and requested more medical information from him. (*Id.*, Exhibit 4 at 4.) On March 5, 1999, CNA approved LTD benefits for Gonzalez's mental condition and informed him that the period from December 23, 1997 to June 20, 1998 was used to satisfy the LTD plan's 180–day Elimination Period. (*Id.*, Exhibit 4 at 4; Docket No. 44, Exhibit 8 at 156–159.) CNA further informed Gonzalez that, since the LTD plan limits disability benefits for mental or nervous conditions to a maximum of 24 months after the 180–day Elimination Period, his LTD benefits would continue until June, 23, 2000, as long as he remained disabled during that period. (Docket No. 28, Exhibit 4 at 4; Docket No. 44, Exhibit 8 at 156–159.)

During the two years Gonzalez received disability benefits, CNA continuously reviewed his medical records.[2] (Docket No. 28, Exhibit 4 at 4–5.) In August 1999, CNA requested from an independent medical consultant, Dr. Eugene Truchelut, a review of the medical evidence. (*Id.*, Exhibit 4 at 5.) Dr. Truchelut concluded that there were no consistent objective findings that would support a severe functional impairment. (*Id.*, Exhibit 4 at 5.)

As the expiration date for LTD benefits approached, CNA reviewed Gonzalez's medical evidence and conducted a peer

---

**2.** CNA requested medical information from Gonzalez on March 11, 1999; April 5, 1999; May 5, 1999; June 25, 1999; October 6, 1999; December 16, 1999; Feburary 25, 2000; and April 26, 2000.

review in order to determine whether Gonzalez still met the LTD plan's second definition. (*Id.*, Exhibit 4 at 5–6.)

On May 24, 2000, CNA again requested an independent medical consultation from Dr. Eugene Truchelut. (*Id.*, Exhibit 4 at 6.) On May 26, 2000, Dr. Truchelut issued a report concluding that, from a physical perspective, the medical records indicated that the claimant was capable of low-level work activities. (*Id.*, Exhibit 4 at 7.) On June 7, 2000, based on this evaluation, the DBS and the NCM determined that Gonzalez was not totally disabled for any occupation as required by the LTD plan's second definition. (*Id.*, Exhibit 4 at 7.)

Gonzalez submitted additional medical evidence to CNA which it reviewed and considered. (*Id.*) On June 28, 2000, however, both the NCM and the DBS agreed that the additional information did not alter their decision. (*Id.*)

On July 5, 2000, CNA notified Gonzalez that it had cancelled his LTD benefits effective June 23, 2000, because the medical evidence did not support a finding that his physical condition prevented him from performing the duties of an occupation for which he was qualified. (*Id.*, Exhibit 4 at 7–8.)

On August 25, 2000, Gonzalez requested reconsideration of CNA's decision. (*Id.*, Exhibit 4 at 8; Docket No. 44, Exhibit 4 at 146–149.) Although the defendants deny that Gonzalez supplied additional medical information (Docket No. 28 at 8–9), Gonzalez argues that he attached to his request two letters from two of his physicians, Dr. Roberto Rivera Rivera and Dr. Oscar E. Ramos Roman. (*See* Docket No. 44, Exhibit 4 at 146–149.) These letters claim that Gonzalez is physically disabled and cannot perform the duties of any occupation. (*Id.*)

On September 29, 2000, CNA denied Gonzalez's request and referred the case to the Appeals Committee. Gonzalez did not provide additional medical evidence to the Appeals Committee. (Docket No. 28, Exhibit 4 at 8–9.) On October 3, 2000, the Appeals Committee upheld CNA's decision. (*Id.*, Exhibit 4 at 9–10; Docket No. 44, Exhibit 6 at 151–153.) It determined that the medical evidence provided by Gonzalez's physicians did not reflect that he was totally disabled and incapable of returning to the work force to an occupation for which he is qualified. (Docket No. 28, Exhibit 4 at 9–10; Docket No. 44, Exhibit 6 at 151–153.) The Appeals Committee informed Gonzalez that although his mental condition could still persist, he had exhausted the LTD benefits for that condition. It also informed him that their determination was final and binding. (Docket No. 28, Exhibit 4 at 9–10.)

## DISCUSSION

### I. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, where pertinent, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000).

In order for the factual controversy to prevent summary judgment, the contested fact must be "material" and the dispute over it must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under the governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994)

To make this assessment in a given case, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). When carrying out that task, the court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *See Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## II. *Compliance with Local Rule 311.12.*

Local Rule 311.12 requires that "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record." Gonzalez failed to fully comply with this Rule. Although he did submit a separate statement of contested material facts, of the more than 25 facts alleged, only 13 have some reference to the record and only 9 have specific page reference. The Court is not required to "ferret through the record" looking for facts that may favor plaintiffs when those facts were not proffered under a counter designation of facts as required by Local Rule 311.12. *Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001). The First Circuit has stated "with reference to this particular rule, that 'parties ignore [it] at their own peril,' and that 'failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.'" *Id.*

Gonzalez claims, however, that he should be entitled to conduct further discovery in order to present evidence in opposition to defendants uncontested facts 2 and 3 regarding CNA's conflict of interest. (Docket No. 54, at 3.)

Defendants' uncontested fact 2 states the powers the LTD plan confers to the Committee. (Docket No. 28 at 3.) This information appears in the "Long Term Disability Benefits Plan of Citibank, N.A.

and Participating Companies." (*See* Docket No. 28, Exhibit 1.) Uncontested fact 3 states that Citibank entered into a contract with CNA to act as claims administrator of the LTD plan, and lists the powers the contract grants CNA. (Docket No. 28 at 3.) This information appears in the "Administration Agreement between Citibank and CNA." (*See Id.*, Exhibit 2.)

On July 10, 2002, defendant provided plaintiff with disclosures which included these documents. Therefore, this information was available to plaintiff. Furthermore, plaintiff cannot excuse his failure to comply with Local Rule 311.12 simply by stating he needs to conduct further discovery when he indeed had ample time to conduct such discovery.

The discovery deadline pursuant to the Case Management Order issued on June 5, 2002, was November 1, 2002. (*See* Docket No. 13.) The deadline for filing objections to the Case Management Order was June 17, 2002. (*Id.*) Moreover, on July 21, 2002, both parties filed a Joint Memorandum in which they agreed on the discovery deadline. (*See* Docket No. 23.) To date, plaintiff has not filed any objections to the discovery deadlines nor has he filed a motion requesting discovery.

The First Circuit has strongly urged District Courts to set and comply with specific discovery closure dates and deadlines. *Serrano–Perez v. FMC Corp.*, 985 F.2d 625, 628 (1st Cir.1993). *See Corretjer Farinacci v. Picayo*, 149 F.R.D. 435, 439 (D.P.R.1993). Gonzalez does not provide a reason why this Court should grant his apparent request for additional discovery.[3]

In light of the foregoing, and for purposes of this motion, the Court will consider from Gonzalez's statement of uncontested facts only those facts with specific reference to the record.

The Court, however, "cannot provide ... that a motion for summary judgment will be automatically granted when the opposing party fails to [properly] respond. The Court first must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir.1989).

### III. *ERISA standard*

The Court will review Gonzalez's ERISA claim under an "arbitrary and capricious" standard. *Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 18–19 (1st Cir.2003); *Brigham v. Sun Life of Canada*, 317 F.3d 72, 80–81 (1st Cir.2003); *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583 (1st Cir. 1993). Typically, courts apply *de novo* review on claims for denial of benefits brought under 29 U.S.C. § 1132(a)(1)(B), unless "a benefits plan ... clearly grants discretionary authority to the administrator." *Rodriguez–Abreu*, 986 F.2d at 583. Where the administrator has such discretion, courts apply a "deferential arbitrary and capricious standard of judicial review." *Recupero v. New England Telephone & Telegraph Co.*, 118 F.3d 820, 827 (1st Cir. 1997). Such is the case here. "It is, of course, the hallmark of such review that a court is not to substitute its judgment for

---

**3.** Gonzalez supports his request for further discovery on *Hensley v. Northwest Permanente P.C. Retirement Plan and Trust*, 5 F.Supp.2d 887 (D.Or.1998). (*See* Docket No. 54 at 3.) In *Hensley*, the District Court of Oregon allowed a complainant to conduct further discovery in order to determine the appropriate standard of review due to an apparent conflict of interest. Whether the complainant had satisfied an "anti-ferret" rule was not an issue before the Court. Consequently, plaintiff cannot rely on *Hensley* to excuse his failure to comply with Local Rule 311.12.

that of the [decision-maker]." *Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir.1998)(*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)) (internal citations omitted).

In this case, pursuant to the LTD plan, the Committee entered into a contract with CNA to act as its Claims Administrator/Fiduciary. This agreement gives CNA full discretion to evaluate claims, make final disability determinations, evaluate the employee's eligibility, and determine whether the disability meets the terms of the Plan. Furthermore, the LTD plan clearly states that the Claims Administrator has the authority to determine eligibility for benefits, provide continuous review of the mental and physical condition of a participant who is receiving benefits, and review denied claims as provided in the plan. In light of this manifest delegation of authority, the Court need only determine whether CNA's decision to deny further benefits to Gonzalez was arbitrary, capricious or without substantial evidentiary support.

■ The Court concludes that the Claims Administrator's decision was not arbitrary or capricious. CNA relied on independent medical reports which suggested that Gonzalez was not totally disabled for any occupation as required by the LTD plan's second definition. Furthermore, CNA relied on the DBS and NCM's assessment on the matter.

Gonzalez claims, however, that CNA ignored medical evidence that supported a contrary finding that he is in fact physically disabled. (*See* Docket No. 44, Exhibit 1–4, 18, 19; Exhibit 2 at 44, 46, 48, 49, 57, 58–59, 67; Exhibit 3 at 68.) Specifically, he argues that CNA ignored the additional medical information he supplied with his request for reconsideration. (Docket No. 44)

The record, however, contains sufficient evidence to support the conclusion that CNA thoroughly reviewed all of Gonzalez's medical reports. (*See* Docket No. 28, Exhibit 4 at 3–10). Nonetheless, even in the face of conflicting medical opinions, the extensive medical record supplied by the claimant, the independent medical opinions, and the DBS and NCM's assessment provided CNA with enough evidence to support its decision to deny further LTD benefits to Gonzalez. *See Vlass v. Raytheon Employees Disability Trust*, 244 F.3d 27, 30 (1st Cir.2001)("the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary"); *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998)("sufficiency, of course, does not disappear merely by reason of contradictory evidence"); *De Dios Cortes v. MetLife, Inc.*, 122 F.Supp.2d 121, 129 (D.Puerto Rico 2000)("[t]he First Circuit has noted that contradictory evidence does not necessarily defeat a finding of sufficiency").

■ Gonzales argues, nonetheless, that CNA's dual role creates a conflict of interest that should trigger the use of a *de novo* review or at least a heightened arbitrary and capricious standard. (Docket No. 36 at 11; Docket No. 54 at 9.)

■ The First Circuit established that in conflict of interest cases, the Court must adhere to the arbitrary and capricious standard and the claimant must prove that the decision was improperly motivated. *Doyle v. Paul Revere Life Insurance Co.*, 144 F.3d 181, 184 (1st Cir.1998). The conflict of interest, however, must be real. *Leahy v. Raytheon Co.*, 315 F.3d 11, 16 (1st Cir.2002). "A chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that otherwise would be due." *Id.*

Gonzalez claims that CNA's disregard of the abundant medical evidence, CNA's dual role in determining eligibility and paying benefits, as well as its contradictory statement regarding Gonzalez's disabilities are evidence of conflict of interest. These allegations alone, however, do not show CNA's decisions were improperly motivated.

The record contains sufficient evidence to support the conclusion that CNA thoroughly reviewed all of Gonzalez's medical reports and conducted a full and fair review in accordance with the terms of the LTD plan. Furthermore, Gonzales does not provide evidence that shows CNA's dual role played any part in the benefits termination decision. Moreover, the record does not contain evidence that supports Gonzalez's allegation that CNA made contradictory statements regarding his disability. On the contrary, the record shows CNA's consistency in its conclusions regarding Gonzalez's disability.

Gonzalez also claims that CNA violated the "treating physician rule" because it failed to fully consider Gonzalez's physicians assessments. (Docket No. 36 at 11; Docket No. 54 at 20.)

█ The First Circuit has not determined whether the "treating physician rule" applies in ERISA cases. *See Leahy,* 315 F.3d at 20. In *Leahy,* however, the Court stated in *dicta* that the decisions of the First Circuit reflect a tacit reluctance to apply the "treating physician rule" in the ERISA context. *Id.* at 21 n. 8. Until the First Circuit holds otherwise, the Court shall consider the "treating physician rule" as inapplicable to ERISA cases.

█ Finally, Gonzalez argues that the Court should consider the Social Security Administration's decision in its review of the insurance company's determination. The First Circuit has held, however, that

"benefits eligibility determinations by the Social Security Administration are not binding on disability insurers." *Pari–Fasano v. ITT Hartford Life and Acc. Ins. Co.,* 230 F.3d 415, 420 (1st Cir.2000).

In light of the foregoing and the applicable discretionary standard, even if the Court disagrees with CNA's decision, the record does not support a finding that it was an abuse of discretion. Consequently, the Court dismisses Gonzalez's ERISA claim.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion for summary judgment. Judgment will be entered accordingly.

IT IS SO ORDERED.