**Mark R. COLBY, Plaintiff,**

v.

**UNUMPROVIDENT, Defendant.**

**No. CIV.A.03–10001–JLT.**

United States District Court,
D. Massachusetts.

Aug. 10, 2004.

---

Michael J. Kelley, Law Office of Michael J. Kelley, Boston, MA, for Mark R. Colby, Plaintiff.

John J. Aromando, Pierce Atwood, Portland, ME, Mark E. Porada, Pierce Atwood, Portland, ME, Geraldine G. Sanchez, Pierce Atwood, Portland, ME, for Unum Provident, Defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Mark R. Colby ("Colby") filed this action against Defendant UnumProvident ("Unum"), alleging wrongful termination of his long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1]

Both parties have filed dispositive motions, which are now before this court.

## DISCUSSION

### A. Background

The parties briefed motions for judgment on the administrative record and submitted the Administrative Record ("the Record"), which was the basis for Unum's decision that Colby no longer qualified for long-term disability benefits. The following facts are derived from that Record.

Colby is a sixty-three-year-old former case coordinator at North Charles, Inc. ("North Charles"). Such a position qualifies as "light capacity" employment.[2] He

---

1. 29 U.S.C. §§ 1001 *et seq.*

2. Administrative R. at 225.

began working at North Charles in 1997, and he had been working there full-time when he filed his claim for long-term disability in 2001. Unum was at all relevant times the plan administrator and insurer of North Charles' Employee Disability Plan ("the Plan"). The Plan is an employee benefit plan and is, therefore, governed by ERISA.[3]

On January 9, 2001, Colby suffered a stroke.[4] He was hospitalized at Beth Israel Medical Center until January 16, 2001, at which time he was transferred to Spaulding Rehabilitation Hospital for further treatment. He was discharged from the rehabilitation hospital on January 27, 2001, and he then received care from Spaulding's Home Health Agency from February 1, 2001 through February 8, 2001. In addition, Colby's treating physician, Dr. Eva Selhub, prescribed physical therapy for him. Colby was discharged from that therapy at the end of June 2001.

Colby filed his initial claim for disability benefits on January 25, 2001. Unum approved his claim on April 11, 2001 and immediately began paying Colby benefits under the Plan.[5]

In August 2001, Dr. Selhub submitted a letter to Unum at its request, in which she noted, "[Colby] is limited by a lot of fatigue especially on the extremities effected by the stroke. He is unable to stand or walk for long periods of time, nor able to concentrate." [6]

Unum reevaluated Colby's claim for disability benefits in January 2002. It conducted a medical review of Colby's file and determined that Colby had no neurological impairment and had recovered sufficiently from his stroke to engage in "sustained light functional capacity" work.[7] On February 22, 2002, Unum terminated Colby's benefits. In its letter to Colby, Unum stated:

> In review of the information available to us, from a neurovascular standpoint, we conclude that you would have sustained light functional capacity. In regards to the restrictions and limitations provided by Dr. Selhub, we were not provided any objective medical evidence to support them.
>
> . . . . .
>
> If you have **new, additional** information not already in our file to support your request for disability benefits, please send it to the address noted in this letter. For example:
> - All current medical records (including treatment notes, procedure notes, and test results) from all treating providers from August 1, 2001 to the present.
> - A list from your physician indicating the activities you cannot and should not do along with an explanation of the medical reasoning supporting these restrictions and limitations.
> - The enclosed Functional Capacities Evaluation form and supplemental form.[8]

Colby appealed Unum's decision by a letter dated March 20, 2002. With that letter, Colby submitted to Unum two additional reports. One of the reports was

---

3. *Id.; see* 29 U.S.C. § 1144(a).

4. This was Colby's second stroke in three years. He suffered an earlier stroke in 1998, but he had fully recovered by 2001. Mem. in supp. of Pl.'s Mot. for J. at 3.

5. The plan had a three-month "elimination period" during which no benefits would be paid. Administrative R. at 519. Colby's elimination period ran from January 9, 2001 to April 9, 2001. So, Unum's payment obligation commenced on April 10, 2001.

6. Administrative R. at 220.

7. *Id.* at 231.

8. *Id.* at 238–39 (emphasis in original).

from Dr. Jeffrey Garber, his endocrinologist, who opined that "[i]t may well take several months to optimize his hormonal status, which could interfere with his functional status in many ways."[9] The other report was an Estimated Functional Abilities form completed by Dr. David August, Colby's internist. Dr. August wrote:

> Mr. Colby has had [two] strokes. He has gradually improved BUT his recovery is clearly delayed secondary to a pituitary tumor, HTN [hypertension], diabetes, [and] hyperlipidemia [high cholesterol]. It would be impossible for him to work at present BUT his prognosis is reasonably good and he should be able to return to work at some point.[10]

On May 3, 2002, Unum notified Colby that it was upholding its decision to terminate his benefits. Explaining its decision, Unum wrote:

> Dr. Garber's records document you report being tired, exhausted and poor energy level, but your attending physician does not indicate how your daily activities or functional capacity is effected by this condition .... To date we have not been provided any objective medical data to review regarding treatment provided by Dr. August for conditions of status post two strokes, pituitary tumor, hypertension (HTN), diabetes or hyperlipidemia referenced on the estimated functional abilities dated March 4, 2002.[11]

As part of Colby's next appeal, Dr. August completed a Physical Residual Capacity Questionnaire ("Questionnaire") on June 24, 2002, which was submitted to Unum soon thereafter. In the Questionnaire, Dr. August concluded that, due to his disability, Colby: (1) suffers from severe fatigue and exhaustion, (2) can sit for one to two hours, (3) can stand for ten to fifteen minutes, (4) can sit for a total of three hours in an eight-hour workday, (5) can stand for a total of thirty to sixty minutes in an eight-hour workday, (6) should walk four to five times for twenty to thirty minutes in an eight-hour workday, (7) will need to take unscheduled breaks during the workday, and (8) will likely be absent from work more than four times per month.[12] Colby also submitted the medical records from the Beth Israel Hospital Emergency Room, where he obtained treatment for complaints of weakness and lightheadedness on July 24, 2002.

Despite this new evidence, Unum upheld its decision to terminate Colby's benefits.

## B. *Standard of Review*

■ The appropriate standard of review for denial of benefits claims under ERISA is outlined by the Supreme Court in *Firestone Tire and Rubber Company v. Bruch.*[13] In *Firestone*, the Court differentiated between a plan that "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"[14] and one that does not.[15] A court reviewing the denial of ERISA benefits under a plan that accords the plan administrator discretion must apply a deferential standard of review.[16] There is no dispute that Unum, as plan administrator, had discretion to construe the terms of the Plan.[17]

---

9. *Id.* at 247.

10. *Id.* at 245.

11. *Id.* at 277–78.

12. *Id.* at 301–06.

13. 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

14. *Id.* at 115, 109 S.Ct. 948.

15. *Id.*

16. *Id.* at 111, 109 S.Ct. 948.

17. Colby, while agreeing that Unum had discretion to construe the terms of the Plan, argues that this court should apply an elevat-

The First Circuit has explicitly laid out the deferential standard a district judge must follow in reviewing such claims.[18] Following the guidance of the Supreme Court in *Firestone*, the First Circuit reiterated that "an insurer's termination decision will be reviewed under a deferential arbitrary and capricious standard where ... the language of the underlying plan reserves discretion to the insurer in determining eligibility for benefits."[19] A judge "must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits,"[20] for "the arbitrary and capricious standard asks only whether a factfinder's decision is plausible in light of the record as a whole."[21]

## C. *Analysis*

Colby asserts that Unum's decision to terminate his benefits was "unreasonable, arbitrary and capricious."[22] He presents two main arguments in favor of his position. First, Colby contends that Unum erred when it cited, as a reason for the termination of benefits, Colby's failure to provide objective medical evidence of his disabling impairment. Colby insists that he had submitted adequate evidence. And second, Colby argues that Unum failed to

abide by ERISA's statutory procedures for notification of the denial of his claim.[23]

To qualify for benefits under the Plan, a claimant must show that:

-[he is] **limited** from performing the **material and substantial duties** of [his] **regular occupation** due to [his] **sickness** or **injury**; and

— [he has] a 20% or more loss in [his] **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, [he is] disabled when UNUM determines that due to the same sickness or injury, [he is] unable to perform the duties of any **gainful occupation** for which [he is] reasonably fitted by education, training or experience.[24]

In addition, Unum requires the claimant to submit the following as proof of his claim:

-that [he is] under the **regular care** of a **doctor**;

-the appropriate documentation of [his] monthly earnings;

-the date [his] disability began;

-the cause of [his] disability;

-the extent of [his] disability, including restrictions and limitations preventing [him] from performing [his] regular occupation; and

-the name and address of any **hospital** or **institution** where [he] received treatment, including all attending doctors.[25]

---

ed arbitrary and capricious standard of review because Unum is both the plan administrator and the insurer. Mem. in supp. Pl.'s Mot. for J. at 5; *see Doe v. Travelers Ins. Co.,* 167 F.3d 53 (1st Cir.1999). Because this court finds that Unum decision to terminate benefits was arbitrary and capricious under the more deferential standard, it need not address the merits of Colby's argument.

**18.** *Leahy v. Raytheon Co.,* 315 F.3d 11, 18 (1st Cir.2002).

**19.** *Pari–Fasano v. ITT Hartford Life & Accident Ins. Co.,* 230 F.3d 415, 418 (1st Cir. 2000).

**20.** *Id.*

**21.** *Id.* at 17.

**22.** Mem. in supp. of Pl.'s Mot. for J. at 6.

**23.** *See* 29 U.S.C. § 1133 & 29 C.F.R. § 2560.503–1.

**24.** Administrative R. at 519 (emphasis in original).

**25.** *Id.* at 536 (emphasis in original).

Unum also reserves the right to request that the claimant send proof of his continuing disability, which requires that the claimant show he is still under the regular care of a doctor.[26] Colby, at least initially, met all of the above mentioned requirements, and Unum began paying him long-term disability benefits in April 2001.

Colby's benefits were terminated in February 2002 after Unum conducted a medical review of his claim. His claim was reviewed by two members of Unum's medical department, Nurse Elizabeth M. Israel and Dr. George J. DiDonna. Nurse Israel concluded that Colby, "from a neurovascular standpoint[,] has sustained light functional capacity" and that "with regard to the restrictions and limitations ... from Dr. Selhub[,] .... [Dr. Selhub] does not provide objective evidence to support [them]."[27] Dr. DiDonna agreed with Nurse Israel's assessment and noted in his report to Unum that there was "[n]o documentation of neurological impairment."[28]

■ Despite the great deference that courts must give such determinations, this court finds that Unum's decision to terminate Colby's benefits was arbitrary and capricious. It is undisputed that Colby suffered his second stroke in January 2001. It is also undisputed that Unum initially considered his condition debilitating enough to award him long-term disability benefits. And, while the Record certainly shows that Colby has made significant progress in terms of improving from his stroke, there is no evidence that Colby has recovered sufficiently to engage in "sustained light functional capacity" work.

■ This court is aware that Unum is not required to give special deference to the opinion of a claimant's treating physician.[29] Unum, however, "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."[30] And, none of Colby's treating physicians has indicated that he has improved sufficiently to engage in "sustained light functional capacity" work. In fact, all of them recount the same impediment—limitation due to fatigue.

■ Unum asserts that it does not need to consider Dr. Selhub's opinions concerning Colby's restrictions and limitations because they were not supported by objective medical evidence. This court disagrees. Unum must consider those restrictions and limitations even if they were not supported by objective medical evidence.

The First Circuit has acknowledged that not all disabilities can be supported by "objective medical evidence."[31] In *Brigham v. Sun Life of Canada*, the First Circuit recognized that these types of cases "are by nature very fact-oriented," and that "laboratory tests or similar diagnostic procedures will not always be necessary to substantiate a claim of disability, as certain disabling conditions are not susceptible to such objective evaluations."[32] While the immediate cause of Colby's disability, his stroke, can be, and was, revealed via diagnostic testing, his residual physical limitations cannot. And, Colby

---

26. *Id.*

27. *Id.* at 231.

28. *Id.*

29. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (holding that "plan administra-tors are not obliged to accord special deference to the opinions of treating physicians").

30. *Id.* at 834, 123 S.Ct. 1965.

31. *See Brigham v. Sun Life of Canada,* 317 F.3d 72, 84 (1st Cir.2003).

32. *Id.* at 84.

has submitted more than adequate documentation of his stroke and the limitations that it has caused.

 Unum's subsequent denials of Colby's appeals are equally arbitrary and capricious. With each appeal, Colby submitted updated medical reports from his treating physicians. The Questionnaire completed by Dr. August on June 24, 2002 again delineated Colby's restrictions and limitations. This Questionnaire, while still concluding that Colby was unable to return to work, imposed fewer restrictions on Colby's activities than the ones contained in his August 2001 report. Colby's condition was improving, but he had still not recovered sufficiently to engage in "sustained light functional capacity" work.

No evidence in the Record contradicts the medical reports submitted by Colby. Nowhere does Unum allege that Colby is participating in activities that belay the restrictions and limitations imposed by his physicians, nor did Unum conduct an independent medical examination of Colby that could have produced a contrary opinion of his medical condition. The medical opinions on which Unum relied were provided by a nurse and a doctor who never actually examined Colby and, instead, depended on observations made by others.

Because this court holds that Unum's decision to terminate Colby's benefits was arbitrary and capricious, there is no need to address the merits of Colby's argument that Unum failed to abide by ERISA's statutory procedures for notification of the denial of his claim. Unum shall pay Colby all benefits due from the date of its original denial of benefits through his twenty-four month initial benefits period. Unum shall also conduct a new claim review to determine whether Colby is entitled to receive benefits subsequent to that date.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is ALLOWED, and Defendant's motion for judgment on the administrative record is DENIED. AN ORDER WILL ISSUE.