502

Ariel GERNES, Plaintiff,

v.

HEALTH AND WELFARE PLAN OF METROPOLITAN CABINET, Blue Cross Blue Shield of Massachusetts, Defendants.

Civil Action No. 2010–10060–RBC.[1]

United States District Court, D. Massachusetts.

Jan. 19, 2012.

---

1. On May 6, 2011, with the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Kelly Karlene LoCascio, Lisa Jeanette Counters, Michael Jay Ward, Angel Jet Services LLC, Scottsdale, AZ, M. Katherine Sullivan, Mala M. Rafik, Rosenfeld Rafik & Sullivan, P.C., Boston, MA, for Plaintiff.

Charles Hamilton Houston, III, Gonzalez Saggio & Harlan LLP, Phoenix, AZ, Joseph D. Halpern, Blue Cross Blue Shield Law Dept., Boston, MA, for Defendants.

*MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 55), PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (# 58), AND PLAINTIFF'S MOTION TO STRIKE PORTIONS OF BLUE CROSS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (# 67)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

On October 12, 2009, Angel Jet Services, LLC ("AJS") brought this action individually and on behalf of Ariel Gernes ("Gernes") in the U.S. District Court for the District of Arizona pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover medical benefits from Health and Welfare Plan of Metropolitan Cabinet ("the Plan") and Blue Cross Blue Shield of Massachusetts ("BCBSMA"). (# 1)

On November 9, 2009, the defendants submitted a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (# 16), a motion to transfer to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) (# 17), an

affidavit in support of both motions (# 18), and a memorandum of law in support of both motions. (# 19) In response, AJS agreed to stipulate to transfer the case to the District of Massachusetts and to submit an amended complaint substituting Gernes, the beneficiary, as the named plaintiff. (# 26) On January 6, 2010, Judge John W. Sedwick ordered the case transferred to the District of Massachusetts (# 28), and the case was transferred on January 15, 2010. (# 29)

On February 9, 2010, AJS submitted an amended complaint substituting Gernes as plaintiff. (# 34) The defendants filed their answer on February 15, 2010. (# 35) On May 3, 2010, the defendants filed a hard copy of the administrative record of Gernes' claim ("AR"). (# 40)

On May 17, 2010, Gernes filed a motion for discovery (# 41) and a memorandum in support of the motion. (# 42) On June 1, 2010, Gernes filed a motion to expand the scope of the judicial record (# 44), together with a memorandum and exhibits in support of the motion. (# 45) The defendants submitted memoranda in opposition to the motion for discovery on June 3, 2010 (# 46), and in opposition to the motion to expand the scope of the judicial record on June 9, 2010. (# 47)

On August 25, 2010, Judge Nathaniel M. Gorton referred the motions for discovery and to expand the scope of the judicial record to the undersigned for resolution. *See* Electronic Order entered 08/25/2010. After hearing, the motion for discovery was denied on September 21, 2010. *See* Electronic Order entered 09/21/2010.

On October 20, 2010, counsel for the defendants were ordered to file a statement of compliance with the requirements of 29 C.F.R. § 2560.503–1(h)(2)(iii) as elucidated by 29 C.F.R. § 2560.503–1(m)(8). *See* Electronic Order entered 10/20/2010. On October 21, 2010, the defendants filed a statement of regulatory compliance (# 48), Gernes filed a motion for leave to file a response to the defendants' statement of regulatory compliance (# 49), and the defendants filed an opposition to Gernes' motion. (# 50) The motion to expand the scope of the judicial record was denied on December 16, 2010, and Gernes' motion for leave to file a response to the defendants' statement of regulatory compliance was found to be moot. *See* Electronic Orders entered 12/16/2010.

On March 11, 2011, the defendants filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 (# 55), a memorandum in support of the motion (# 57), and a statement of material facts pursuant to Local Rule 56.1. (# 56) On the same day, Gernes also filed a motion for summary judgment (# 58), a memorandum in support of the motion (# 59), and a statement of material facts. (# 60) The defendants filed an opposition to Gernes' motion for summary judgment (# 61) and a response to her statement of material facts (# 62) on March 28, 2010. On the same day, Gernes filed an opposition to the defendants' motion for summary judgment (# 64) and a response to the defendants' statement of material facts. (# 63)

Judge Gorton referred the case for the issuance of a report and recommendations as to the disposition of both motions for summary judgment. *See* Electronic Order entered 04/28/2011. On May 5, 2011, all parties consented to jurisdiction by U.S. Magistrate Judge (# 66), and the following day the case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). *See* Electronic Order entered 05/06/2011.

On May 5, 2011, Gernes filed a motion to strike portions of the defendants' opposition to her motion for summary judgment.

(# 67) The defendants filed an opposition to Gernes' motion to strike the next day. (# 68)

At this juncture, with the record complete, the pending motions stand ready for resolution.

## II. Factual Background

The relevant uncontested facts are as follows. Gernes was a participant in the Plan, which was sponsored by her employer, Metropolitan Cabinet. BCBSMA provided insurance coverage for the Plan. (# 56 ¶¶ 2–3; # 63 ¶¶ 2–3; # 60 ¶¶ 1–2; # 62 ¶ 1) Mondial Assistance ("Mondial") is an independent company that provides overseas services for and on behalf of BCBSMA's BlueCard Worldwide Program. (# 56 ¶ 13; # 63 ¶ 13) AJS, doing business as Angel MedFlight, is an air ambulance services company. (# 56 ¶ 20; # 63 ¶ 20; # 60 ¶ 23)

### A. Gernes' Treatment

On or about May 16, 2009, Gernes was severely injured in a high speed automobile accident in France and was transported by helicopter to Hôpital Beaujon in Clichy.[2] (AR at 147; # 56 ¶ 12; # 63 ¶ 12; # 60 ¶¶ 8–9; # 62 ¶ 8) Gernes' step-grandmother, Diane Green ("Green"), was the primary point of contact for Gernes and her family in their communications with Mondial, BCBSMA, and AJS. (AR at 176)

On May 27, 2009, Gernes' treating physician asked Mondial whether the Plan covered repatriation, and Mondial responded that it did not. (AR at 177; # 60 ¶ 14) On the same day, Mondial submitted a preauthorization request to BCBSMA on behalf of Gernes for air ambulance transportation back to the United States. (AR at 155–56; # 60 ¶ 18; # 56 ¶ 15; # 63 ¶ 15) Dr. Fred Dekow, BCBSMA Associate Medical Director, denied preauthorization on June 1, 2009. (AR at 184; # 56 ¶ 18; # 63 ¶ 18; # 60 ¶ 21) Mondial notified Green of the denial on June 2, 2009. (# 60 ¶ 22)

On or about May 29, 2009, Gernes was relocated from the ICU to the Orthopaedics ward of Hôpital Beaujon.[3] (# 56 ¶ 12; # 63 ¶ 12) While there, Green complained on behalf of the family about Gernes' treatment at the hospital and the difficulty of the family remaining in France. (AR at 177–79; # 56 ¶ 19; # 63 ¶ 19)

On June 7, 2009, AJS transported Gernes from Hôpital Beaujon to Brigham and Women's Hospital in Boston. (AR at 150, 151, 263–68; # 60 ¶ 29; # 56 ¶ 20; # 63 ¶ 20) Thereafter, AJS submitted a claim to BCBSMA for transportation costs totaling $798,400.00. (AR at 270–71; # 56 ¶ 20; # 63 ¶ 20)

### B. The Plan's Air Ambulance Coverage

The Plan's medical necessity definition states that, to receive coverage, "all of your health care services must be *medically necessary* and appropriate for your health care needs." (AR at 118 (emphasis in original)) The Plan excludes "service ... primarily for your convenience or for

---

2. The ICU Medical Report indicates that intake occurred at 2:20 pm on May 15, 2009, and a CT scan was performed on that day. (AR at 228) Gernes' statement of facts lists the date of the accident as May 19, 2009. (# 60 ¶ 8) The defendants' statement of facts gives the date of hospital admission as May 16, 2009. (# 56 ¶ 12) The exact admission date does not bear on the Court's review of the benefit denial.

3. Hospital records list Gernes' move to the Orthopaedics ward as occurring on June 1, 2009. (AR at 230) BCBSMA's statement of facts lists the date as May 29, 2009, to which Gernes admits. (# 56 ¶ 12; # 63 ¶ 12) The exact date does not bear on the Court's review of the benefit denial.

the convenience of your family or the health care provider...."[4] (AR at 118; #56 ¶8; #63 ¶8) The Plan specifies ambulance services coverage for "Emergency Ambulance Transport ... to an emergency medical facility for *emergency medical care*," and "Other *Medically Necessary* Ambulance Transport." (AR at 49–50 (emphasis in original); #56 ¶9; #63 ¶9) BCBSMA sets forth standards governing coverage for air ambulance services in its Ambulance Benefit Policy ("Ambulance Policy"). (AR at 126–27; #56 ¶10; #63 ¶10)

### C. Administrative Review

The claim at issue here was submitted by AJS on behalf of Gernes in a letter dated June 13, 2009.[5] (AR at 274–77) The submission included claim forms, a letter from AJS, and a "letter of medical necessity" bearing the name and signature of Gernes' treating physician in France, Dr. Sebastian Pease. (AR at 270–78) The "letter of medical necessity" stated that Gernes needed "evaluation and rehabilitation," that Brigham and Women's Hospital in Boston "is the [closest] most appropriate facility to treat her intricate and complex injuries," and that "[g]round or commercial means of transportation are not acceptable." (AR at 272–73)

Dr. Mark Dichter, BCBSMA Associate Medical Director, reviewed "prior clinical notes ... [the] appeal letter and the provider's letter of medical necessity." (AR at 171–72) On June 24, 2009, Dr. Dichter concluded that Gernes "did not meet the medical necessity criteria required for an air ambulance transport." (AR at 171–72; #56 ¶23; #63 ¶23) Dr. Dichter stated that "[t]here is no documentation [explaining] why the orthopedic surgery could not medically be done at the hospital where [Gernes] was for 3 weeks. There are also orthopedic hospitals and rehabilitation facilities elsewhere in Europe." (AR at 172) Dr. Dichter concluded that "this was not an emergency and it is not covered for the convenience of the doctor, staff, or family." (AR at 171–2; #56 ¶23; #63 ¶23)

AJS appealed this denial on June 26, 2009 in a letter with supporting documentation.[6] (AR at 236–78; #56 ¶24; #63 ¶24) On July 1, 2009, BCBSMA received additional information from Hôpital Beaujon. (AR at 223, 224–35; #56 ¶24; #63 ¶24) A different reviewer, BCBSMA Associate Medical Director Dr. Eliot Jekowsky, again concluded that Gernes did not meet the medical necessity criteria under the Plan. (AR at 174–75; #56 ¶26; #63 ¶26) On July 7, 2009, BCBSMA notified AJS of Dr. Jekowsky's decision, explaining that the treatment Gernes needed was available at Hôpital Beaujon and other facilities in Europe.[7] (AR at 281–86; #56 ¶26; #63 ¶26) The letter invited AJS to submit

---

4. This modified version of the "medically necessary" definition replaced the previous definition (AR at 32) on October 9, 2008 and was in effect at all times relevant to this case.

5. As noted above, there were previous requests and denials having to do with air ambulance transportation, and AJS referred to this submission as a "first appeal." (AR at 274–77) However, this was the first claim after the transport occurred, the first that included an actual bill and the "letter of medical necessity," and the first submitted through AJS as an authorized representative of Gernes. BCBSMA treated this claim as an

"initial request, not an appeal" because AJS had "the rights to an initial determination." (AR at 170; #60 ¶34; #62 ¶34)

6. Although the letter is titled "Document & Summary Plan Request," BCBSMA asserts, and Gernes admits, that the materials constituted an appeal. (AR at 236; #56 ¶24; #63 ¶24)

7. This second letter was sent to Jeremy Freer of AJS as an authorized representative of Gernes. (AR at 281)

further information that could result in a different decision. (AR at 282; # 56 ¶ 26; # 63 ¶ 26)

On or about August 21, 2009, AJS requested a review from the Office of Patient Protection in the Department of Public Health of the Commonwealth of Massachusetts ("OPP"), which referred the case to Independent Medical Expert Consulting Services, Inc. ("IMEDECS"), an independent external review agency bound by Massachusetts law to ensure that its reviewer has no conflict of interest. (AR at 287–90; # 56 ¶¶ 27, 29, 31; # 63 ¶¶ 27, 29, 31; # 60 ¶¶ 49, 50) After studying the record, IMEDECS' independent reviewer upheld BCBSMA's denial of benefits, finding that "the air ambulance was not medically necessary as defined by the health plan policy." (AR at 297–300; # 60 ¶ 52; # 56 ¶ 32; # 63 ¶ 32) The reviewing physician found that:

> [t]here was no documentation from local authorities in France stating that such rehabilitation cannot be provided in France or in other close by facilities. It would be difficult to believe that such rehabilitation is not available at the same place where [Gernes] had her acute treatment. There is no evidence in the documents submitted that the transferring facility was not able to provide all necessary or special clinical services that this patient needed.

(AR at 300; # 56 ¶ 32; # 63 ¶ 32)

*D. Complaint and Jurisdiction*

Ariel Gernes brings this case under ERISA to "recover benefits due under the [P]lan" pursuant to 29 U.S.C. § 1132(a)(1)(B). (# 34 ¶ 21) She bases federal jurisdiction on 29 U.S.C. §§ 1132(e) and (f) and 28 U.S.C. § 1331.

## III. Standard of Review

■■■ Ina denial of benefits case under 29 U.S.C. § 1132(a)(1)(B), "the district court sits more as an appellate tribunal than as a trial court." *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1 Cir., 2002). Under the standard set forth in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), when a plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts review denials of benefits under a deferential arbitrary and capricious or abuse of discretion standard.[8] *Firestone*, 489 U.S. at 115, 109 S.Ct. 948; *see also Leahy*, 315 F.3d at 15 (applying the *Firestone* framework). When a plan does not grant discretionary authority to the administrator, courts review denials of benefits *de novo*. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. Here, the undisputed language of the Plan explicitly grants BCBSMA "full discretionary authority" over relevant benefits decisions.[9] (# 56 ¶ 4; # 63 ¶ 4) Therefore, the arbitrary and capricious standard applies.

■■■ In ERISA cases, a structural conflict of interest "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. 948 (quoting *Restate-*

---

**8.** In the First Circuit, "arbitrary and capricious" and "abuse of discretion" describe the same standard in the ERISA context. *Leahy*, 315 F.3d at 15 n. 3; *see also Pari–Fasano v. ITT Hartford Life & Accident Ins. Co.*, 230 F.3d 415, 419 (1 Cir., 2000).

**9.** Courts in this circuit have found that substantially identical language granted discretionary authority sufficient to subject benefit denial decisions to an arbitrary and capricious standard. *See Jon N. v. Blue Cross Blue Shield of Massachusetts*, 684 F.Supp.2d 190, 199 (D.Mass., 2010); *Smith v. Blue Cross Blue Shield of Massachusetts*, 597 F.Supp.2d 214, 219 (D.Mass., 2009).

*ment (Second) of Trusts* § 187, Comment d (1959)). If a plaintiff challenging a claim denial can demonstrate an actual conflict of interest, courts may consider the conflict as one factor in determining whether the denial was arbitrary and capricious, but the conflict does not alter the standard itself. *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 115–17, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008); *Cusson v. Liberty Life Assur. Co.,* 592 F.3d 215, 224 (1 Cir., 2010). A decision maker who performs the "dual role" of administering and funding a plan is subject to a structural conflict of interest. *Glenn,* 554 U.S. 105 at 112–15, 128 S.Ct. 2343; *Jon N.,* 684 F.Supp.2d at 198–99. Nonetheless, an administrator can take "active steps to reduce potential bias and to promote accuracy" and thereby reduce the effect of a structural conflict in the decision making process "to the vanishing point." *Glenn,* 554 U.S. at 117, 128 S.Ct. 2343; *Jon N.,* 684 F.Supp.2d at 199–200; *Smith,* 597 F.Supp.2d at 219. Here, as in *Jon N.* and *Smith,* the independent review through the OPP effectively insulated BCBSMA from any potential bias. 684 F.Supp.2d at 200, 597 F.Supp.2d at 219–20. Therefore, Gernes has "clearly taken advantage of an external review process that is expressly designed to reduce the potentially pernicious effects of Blue Cross's structural conflict, and Blue Cross's conflict of interest has been diminished to the vanishing point as a result." *Jon N.,* 684 F.Supp.2d at 200 (quoting *Smith,* 597 F.Supp.2d at 220) (internal quotation marks omitted) (footnote omitted). The ordinary arbitrary and capricious standard applies here, unaffected by any actual conflict of interest.

■ The arbitrary and capricious standard is deferential, requiring an inquiry only into whether the administrator's decision is "reasoned and supported by substantial evidence." *Gannon v. Metro-* *politan Life Ins. Co.,* 360 F.3d 211, 213 (1 Cir., 2004). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." *Gannon,* 360 F.3d at 213; *Leahy,* 315 F.3d at 17–18. For the Court to uphold the administrator's decision, it need only be "plausible in light of the record as a whole." *Leahy,* 315 F.3d at 17. "[I]n order to find that an insurer had abused its discretion under the contract, [the court] would have to conclude that the insurer's eligibility determination was unreasonable in light of the information available to it." *Pari–Fasano,* 230 F.3d at 419.

■ The scope of evidence that a court will consider in reviewing a denial of benefits under the arbitrary and capricious standard is therefore limited to "evaluat[ing] the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Leahy,* 315 F.3d at 18 (footnote omitted). A court is not "to review the ingredients of the administrative record de novo." *Leahy,* 315 F.3d at 18; *see also Recupero v. New England Telephone & Telegraph Co.,* 118 F.3d 820, 829–30 (1 Cir., 1997) (discussing the deference given to out-of-court decisions on the merits).

■ Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In an ERISA case where, as here, review is "confined to the administrative record before the ERISA plan administrator . . . there are no disputed issues of fact for the court to resolve." *Orndorf v. Paul Revere Life Ins. Co.,* 404 F.3d 510, 518 (1 Cir., 2005). The cross motions for summary judgment are the "procedural vehicle" under which the case is adjudicated. *Leahy,* 315 F.3d at 18.

"[T]he non-moving party is not entitled to the usual inferences in its favor." *Orndorf,* 404 F.3d at 517; *see also Liston v. Unum Corp. Officer Severance Plan,* 330 F.3d 19, 24 (1 Cir., 2003) ("[N]o special inferences are to be drawn in favor of a plaintiff resisting in summary judgment; on the contrary, the rationality standard tends to resolve doubts in favor of the administrator."). Because there is no "genuine dispute as to any material fact," Fed.R.Civ.P. 56(a), and trial is not available,[10] the question is whether the plaintiff can show that the administrator's decision was arbitrary and capricious. *See Liston,* 330 F.3d at 24 (stating that on cross motions for summary judgment in an ERISA case, "the issue ... is simply whether the judge deems the administrator's denial of benefits irrational").

### IV. Discussion

The question in this case is whether BCBSMA's denial of Gernes' claim was arbitrary and capricious or an abuse of discretion. Gernes argues that a) BCBSMA should have accepted Dr. Pease's "letter of medical necessity"; b) the reviewing physicians misconstrued the Plan; and c) the Plan's coverage restrictions and the French medical system made repatriation by air ambulance medically necessary. (*See* # 59; # 64)

### A. Dr. Pease's "Letter of Medical Necessity"

■ Gernes argues that BCBSMA arbitrarily rejected Dr. Pease's "letter of medical necessity." Gernes notes that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834,

123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). However, *Black & Decker* held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker,* 538 U.S. at 834, 123 S.Ct. 1965 (footnote omitted); *see also Jon N.,* 684 F.Supp.2d at 203 (explaining that "the process of reviewing a claim for benefits does not rely on the nuances that can be observed through personal examination of the participant" and thus "would seem to be no more or less reliable when conducted by a reviewing physician than when conducted by a treating physician"); *Smith,* 597 F.Supp.2d at 220 (concluding that administrator need not give special weight to treating physician's opinion "or even explain why his opinion was not given as much weight as" opinions of three reviewing physicians).

■ The record shows that Gernes failed to produce enough evidence in support of her claim that air ambulance transportation was medically necessary under the Plan. *See Morales–Alejandro v. Medical Card System, Inc.,* 486 F.3d 693, 700 (1 Cir., 2007) (holding that denial of long-term disability benefits was not arbitrary and capricious when plaintiff failed to produce evidence in support of treating physician's opinion); *Boardman v. Prudential Ins. Co. of America,* 337 F.3d 9, 17 (1 Cir., 2003) (holding that denial of long-term disability benefits was not arbitrary and capricious when administrator repeatedly informed plaintiff that claim lacked sufficient evidence, and plaintiff still failed to submit adequate documentation).

---

**10.** In the First Circuit, jury trials are not available when review is based solely on the administrative record. *Orndorf,* 404 F.3d at 518 n. 10 (citing *Recupero,* 118 F.3d at 831).

At least as early as June 24, 2009, BCBSMA notified Gernes that suitable medical care was available in France. BCBSMA's letter on that date stated that the "situation was no longer an emergency and no documentation was provided that proves that further care was not medically available." (AR at 214; # 56 ¶ 23; # 63 ¶ 23) That letter, and the July 7, 2009 denial letter after appeal, encouraged Gernes to send additional information that could lead to approval of the claim. (AR at 214, 281–83; # 56 ¶ 26; # 63 ¶ 26) However, Gernes offered no further evidence to support Dr. Pease's opinion that "there is no closer accepting medical facility [than Brigham and Women's Hospital in Boston] that would be able to adequately care for [Gernes'] condition." (AR at 272) Gernes failed to develop the administrative record before filing an ERISA complaint in federal court, and therefore she failed to satisfy her burden of proof. *Morales–Ale-jandro,* 486 F.3d at 700; *Boardman,* 337 F.3d at 17.

The administrative record contains sufficient evidence that adequate medical care was available to Gernes in France.[11] Gernes was already in the midst of treatment in France. (AR at 172, 175, 299–300; # 60 ¶ ¶ 38, 55; # 56 ¶ ¶ 23, 25, 32; # 63 ¶¶ 23, 25, 32) Gernes' family was delaying treatment that the hospital was prepared to provide.[12] Furthermore, Gernes' family and Mondial discussed the possibility of moving Gernes to the American Hospital in Paris. (AR at 180, 182; # 60 ¶ 28) The parties dispute whether transfer to and treatment at the American Hospital in Paris would have been covered by BCBSMA. (*Compare* # 59 at 5, *with* # 61 at 5; AR at 180) The administrative record also contains evidence, albeit cursory, that BCBSMA independently investigated the possibility of Gernes receiving treatment in France. (AR at 206, 282, 293; # 60 ¶ 40, 48; # 56 ¶ 22 [13])

---

11. The plaintiff's reliance on *Heffernan v. UNUM Life Ins. Co. of America,* 101 Fed. Appx. 99 (6 Cir., 2004), is misplaced. *Heffernan* held that when an administrator ignored "overwhelming evidence" and the conclusions of all reviewing doctors, including the company's own examining physician, on the basis of "a theory that lacked legitimate foundation," the denial of benefits was arbitrary and capricious. *Heffernan,* 101 Fed.Appx. at 108–09. Here, Gernes' view that the air ambulance was medically necessary is shared by only one of several doctors, and BCBSMA based its decision on more than an abstract theory.

12. Mondial's case review states that on June 5, 2009, two days before the air ambulance flight, Mondial's nurse reported that "the treating physician was awaiting family approval for the pelvic surgery, understanding that the pelvis had not been repaired due to [a] family decision to move [Gernes] back to the US." (AR at 182) A Mondial Medical Director "confirmed the care [at Hôpital Beaujon] has been appropriate...." (AR at 182)

13. Gernes objects on hearsay and foundation grounds to the statement that "on June 18, 2009, Mondial Assistance informed Blue Cross associate Kim Hoff that 'there was never any discussion between the clinicians [at] the Hospital in France regarding [Gernes] not being able to attend rehab due to citizenship.'" (# 63 ¶ 22; # 56 ¶ 22 (quoting AR at 206)) That objection is unavailing because a "'plan administrator is not a court of law and is not bound by the rules of evidence.'" *Cusson,* 592 F.3d at 226 (quoting *Speciale v. Blue Cross & Blue Shield Ass'n,* 538 F.3d 615, 622 n. 4 (7 Cir., 2008)). Furthermore, that portion of the administrative record is relevant not for "the truth of the matter asserted," Fed.R.Evid. 801(c), but as to "whether the administrator's action on the record before him was unreasonable." *Liston,* 330 F.3d at 24; *see also Kiley v. Travelers Indem. Co.,* 853 F.Supp. 6, 9 n. 2 (D.Mass., 1994) (noting that physician's letter in ERISA case was not hearsay because it was offered as basis of administrator's benefit denial, not for truth of content).

The administrative record contains ample evidence that the reviewers considered Dr. Pease's "letter of medical necessity" and had legitimate reasons to reject it. Despite repeated opportunities during the administrative review process, the plaintiff failed to provide BCBSMA with evidence to support Dr. Pease's opinion, even after each reviewing physician found that his opinion lacked adequate support. (AR at 214, 282, 300) The resulting denial of Gernes' claim was therefore within the discretion expressly delegated to BCBSMA by the Plan and was not arbitrary and capricious.

## B. The Reviewing Physicians' Consideration of the Plan

 Gernes also argues that BCBSMA's reviewing physicians misconstrued the Plan by focusing on the emergency provision of the Plan's ambulance coverage and the extrinsic Ambulance Policy. (# 64 at 3–4) When an administrator "construes provisions of the plan in a way that conflicts with the plain language of the plan," relies on known misrepresentations, or imposes requirements extrinsic to the plan, a court may conclude that an abuse of discretion occurred and that the resulting benefit denial was arbitrary and capricious. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458–60 (9 Cir., 1996) (internal quotation marks and citation omitted); *Buffonge v. Prudential Ins. Co. of America*, 426 F.3d 20, 30–32 (1 Cir., 2005) (holding that administrator's denial of long-term disability benefits was arbitrary because it was unreasonable to rely on report of doctor who clearly misrepresented medical evidence); *Miller v. American Airlines, Inc.*, 632 F.3d 837, 849 (3 Cir., 2011) ("[A]n employer who imposes requirements extrinsic to the plan

in evaluating eligibility for benefits acts arbitrarily and capriciously."). None of those factors occurred here.

 Gernes cites the reviewers' observations that her medical condition was no longer in an emergency state at the time of the air ambulance transport. (# 64 at 4) Gernes argues that the reviewers failed to consider the Plan's provision for non-emergency "Other Medically Necessary Ambulance Transport." (# 64 at 4) However, the reviewers found that the transport was not medically necessary, and so there was no need to consider the existence of a non-emergency "other" medical necessity for an air ambulance. *See supra* Part II.C. By addressing whether the air ambulance transport was in response to an emergency and whether it was medically necessary, the reviewers explicitly considered both possible conditions under which air ambulance transport would be covered by the Plan. The reviewers' decision was therefore not arbitrary and capricious. *See supra* Part II.B.

Gernes further argues that the reviewers' reference to the Ambulance Policy was extrinsic and contrary to the Plan, and so reliance upon it in the decision making process was arbitrary and capricious. (# 64 at 6) The "medical necessity" definition of the Plan requires that "health care services must also be ... consistent with the diagnosis and treatment of your condition and in accordance with the *Plan's medical policy* ...." (AR at 118; # 56 ¶ 8; # 63 ¶ 8) (emphasis added) The Ambulance Policy specifically explains that "[t]here is *no medical policy* on this subject." (AR at 126) (emphasis added) The Ambulance Policy is therefore not explicitly incorporated into the Plan's definition of medical necessity.[14]

14. The Ambulance Policy states: "This docu- ment is designed for informational purposes

The Ambulance Policy specifies situations in which "[a]ir ambulance services ... *are eligible for coverage.*" (AR at 126) (emphasis added). The Ambulance Policy explains that "[a]mbulance services are covered to the extent that these types of services are generally covered by each member's benefit design." (AR at 126) Furthermore, the policy lists "[w]hen services are recommended" and "[w]hen services are not recommended." (AR at 126) The Ambulance Policy provides: "Air ambulance services that are of *unquestionable* medical necessity and conform to [a specified criterion] are eligible for coverage." (AR at 126) (emphasis added) The Plan requires treatment to be "medically necessary." (AR at 49)

 Gernes argues that the inconsistent terminology adds a requirement extrinsic to the Plan, so decisions based on the Ambulance Policy must be arbitrary and capricious. (# 64 at 6 (citing *Saffle,* 85 F.3d at 459–60)) However, the reviewers did not base their decisions solely on the Ambulance Policy. They determined that Gernes' air ambulance transport was not medically necessary and that it was not a close decision because Gernes failed to produce sufficient evidence to the contrary. Reference to the Ambulance Policy did not render the reviewers' decisions arbitrary and capricious.

### C. Potential Coverage Restraints

 Gernes further argues that BCBSMA must cover her air ambulance transport back to the United States to receive care because the cost of her care in France would not have been covered by

BCBSMA or the French health care system. (# 59 at 8–14; # 64 at 5–6, 7) Gernes relies on Dr. Pease's "letter of medical necessity" to conclude that only French citizens were covered by the French health care system.[15] (# 59 at 11–12) Gernes asserts that the Plan's limitations on out-of-state and out-of-network provider benefits would have prevented coverage of further medical care in France. (# 59 at 12–14) Even assuming the factual correctness of that contention, it does not guarantee coverage for air ambulance transport under the Plan.

Gernes points to no language in the Plan, and the Court could not identify any on review, that suggests coverage of any transportation necessary to guarantee unqualified coverage of all health care costs. "Under the arbitrary and capricious standard, [the court] need not decide what is the best reading of the words in [an] insurance policy.... Instead, [the court is] called upon only to decide whether the plan administrator's denial of benefits was "reasoned and supported by substantial evidence." " *Stamp v. Metropolitan Life Ins. Co.,* 531 F.3d 84, 94 (1 Cir., 2008) (citations and internal quotations omitted). "[A]mbiguity in a plan term does not necessarily foreclose summary judgment...." *Balestracci v. NSTAR Electric & Gas Corp.,* 449 F.3d 224, 230 (1 Cir., 2006). Although the hypothetical circumstances that Gernes presents would likely be financially difficult for her, BCBSMA reasonably could have concluded that the actual circumstances did not meet the medical necessity criteria.

only and *is not an authorization, or an explanation of benefits, or a contract."* (AR at 129)

**15.** Gernes also refers to an article from a book on public and private health care. There is no evidence that it was submitted to

BCBSMA *during any stage of its review, and it is therefore irrelevant to whether the decision was arbitrary and capricious. See Orndorf,* 404 F.3d at 519 ("[T]he final administrative decision acts as a temporal cut off point").

Because Gernes has not met her burden to show that BCBSMA's denial of benefits was arbitrary and capricious, BCBSMA is entitled to summary judgment.

### D. Motion to Strike

Gernes moves to strike portions of BCBSMA's opposition to her motion for summary judgment. Specifically, she moves to strike exhibits concerning the website of the American Hospital in Paris and a complaint in another case alleging that the president of AJS regularly drafted "letters of medical necessity" for clients and forged doctors' signatures as part of insurance claims. (# 67; # 61) It is well settled in the First Circuit that district courts' review in ERISA cases is generally limited to the record before the administrator.[16] *See Leahy*, 315 F.3d at 18 (The district court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary"); *Liston*, 330 F.3d at 23 ("The ordinary rule is that review for arbitrariness is on the record made before the entity being reviewed.").

BCBSMA states that it attached the exhibits to its opposition in order to invite the Court to take judicial notice of the website and the complaint. (# 68 at 3–7) The information in Exhibit 1A is dated April 21, 2010, more than seven months after the "temporal cut off point" of the final administrative decision, which was dated September 16, 2009. (AR at 297) *See Orndorf*, 404 F.3d at 519 ("[T]he final administrative decision acts as a temporal cut off point"). Furthermore, the website is not necessary to decide this case, and the Court declines to take judicial notice of it. The Court also declines to take judicial

notice of the complaint against AJS, offered as relevant to "the scope of what would be at issue in a remand," because the denial is upheld. (# 68 at 7)

### V. Conclusion and Order

For the reasons stated, it is ORDERED that the Defendants' Motion for Summary Judgment (# 55) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that the Plaintiff's Motion for Summary Judgment (# 58) be, and the same hereby is, DENIED. It is FURTHER ORDERED that the Plaintiff's Motion to Strike Portions of Blue Cross' Opposition to the Plaintiff's Motion for Summary Judgment (# 67) be, and the same hereby is, ALLOWED as to Exhibits 1A, 1B, and 2 attached to BCBSMA's Opposition to the Plaintiff's Motion for Summary Judgment. Final judgment shall enter for the defendants.

---

16. The First Circuit has recognized that there may be exceptions to this general rule, but since neither party argues that they apply

here, and the Court sees no reason they would, there is no need to address them in detail. *Liston*, 330 F.3d at 23.